Good morning. Robert Rexhope for Mr. Moran. With the panel's permission, I'd like to begin with the Fourth Amendment issue raised in my brief and then move on to a general harmfulness discussion about the other evidentiary issues I believe occurred at trial. Regarding the Fourth Amendment issue, it surprises me that the parties agree on so much here. Obviously, the parties agree on the standard review. That's pretty well said. Parties also seem to agree that this error cannot be harmless, at least to the extent that the government never argued in their answering brief that if there was a Fourth Amendment error, it would have been harmless. And the parties largely agree as to the facts that this court should consider in determining this issue. And those facts summarize somewhat well, I believe, at the red brief at 15. These are the facts. Agents suspected a material witness, Mr. Duarte, used another person's identification to enter the country. I'd say suspected. The government uses the term new. I think suspected is more accurate. When you read the record, Excerpt of Record 42, you have an officer saying, hey, that's not his picture, whether or not that's actual knowledge as opposed to suspicion. But the agents definitely have suspicion. Did they have probable cause to believe he'd enter the country? I don't think the court needs to decide that. Is the court asking probable cause to arrest Mr. Duarte, the material witness? I believe so. I don't think that's necessary to this court's determination. That's my issue, I guess I should say. These agents during this operation saw Mr. Duarte walk into a restaurant, sit down with what turned out to be Mr. Moran's co-defendant at trial, and they sat there for two hours, periodically looking out the window. They had an unheard conversation, meaning that the agents had no idea what the conversation was about. There's no evidence in the record as to how long the conversation was. We know how long approximately they were in the restaurant, fast food restaurant, but not how long they were actually talking. Nearly two hours later, they leave, walk a couple blocks. Mind you, in downtown San Ysidro, California, a major urban center. To my mind, that's important to this court's analysis. They meet my client briefly at a street corner, and my client walks a few city blocks with Mr. Duarte. Does the record indicate how long that walk with Mr. Duarte was? I thought it indicated it lasted up to half an hour. There is conflicting information in the record, and the conflicting information I don't think is anything nefarious. It comes from what I believe are honest recollection. What's the shortest amount of time or distance? Five to ten minutes, four city blocks is the shortest time. I don't recall the half an hour, but I'm certainly not saying that's not it. In the light most favorable to the government, it was longer and farther. Yes. But I don't think this panel views the facts in the light most favorable to the government. This is a warrantless arrest. The burden rests right there. That's true. This is not a sufficiency of the act. It is not a sufficiency. This is a warrantless arrest, and the burden rests on the government to show that there's probable cause to. . . No. It's a little. . . But the district court did make findings about the, as I understand it, about the route that Mr. Moran took. Yes. It's a little. . . That it was circuitous. Or circuitous is wrong because it was lined. It's line to line, but it wasn't a straight line from one place to the other. Precisely. It was actually two points. To answer your question directly, no, the district court did not make a factual determination on the amount of time that my client and the material witness, Mr. Duarte, were walking together. Because it's a little bit. . . It's a little bit odd because the district court's ruling, the actual ruling, that's in Excerpt Volume 1, obviously, was a ruling that was made pretrial on the motions. And then both the governor and I think it's true that the testimony at trial is the record that this court should look to in making its determination whether or not the Fourth Amendment was violated. As to the security of the route, I take the court's point that it wasn't circuitous, it was all in straight lines. But what we're talking about is a walk of three or four city blocks and then backtracking one block. So I'm trying to, again, take the facts in the light most favorable to your client. And let's pick up the scenario when your client meets Mr. Duarte. Yes. They walk together for four or five city blocks. We don't know for how long. Yes. And then they approach a car. Yes. To which they apparently are both trying to get in. Is that a fair summary of the evidence? When agents come to the car, yes, right up until the point that we're at the car. Agents had no reason to believe that my client, Mr. Moran, was getting into the car. The testimony, I believe, if I remember correctly, and I'm pretty sure I am, the agent saw Mr. Duarte, the material witness, leaning towards the door to get into the car. On the passenger side. On the passenger side. And there was nobody in the driver's seat. I believe Ms. Demas was in the passenger seat. I thought she was in the rear seat of the car. Am I wrong in that? She may have been with her child. She actually had her child in a child seat in the back seat. So that there was nobody in the driver's seat, as I understand it. Mr. Duarte was moving to get into the passenger side. And we can draw it. Whatever inference we draw, I just want to make sure. I don't have a specific recollection of that, so I certainly can't say that you're incorrect in that statement. So, I mean, that's it. I mean, those are the facts. And this Court has to decide whether those facts are sufficient. And I don't want to get up on a soapbox here, but they threw my client to the ground. They handcuffed him. They drew guns. They forcibly moved him from that parking lot back to the border. And they interrogated him. Does that make any difference? If they had probable cause, that would be okay. No. And if they didn't, it would not be okay. There was nothing improper about the arrest other than the arrest itself. The reason I bring up those facts is sometimes there's all this, you know, I'm not going to call it boilerplate, but, you know, probable cause is incapable of perfect definition. Probable cause is this. And we forget why. What happened is not relevant to the ‑‑ what happened after the arrest, whether he's handcuffed, he's on the ground, he's standing up, is not relevant to the issues that you raise here. This is not a 1983 excessive force claim. No, ma'am. So it doesn't help, in my opinion. So really the question is how much association is necessary with an ongoing criminal activity to have probable cause to believe that the other person is also engaged in it. And I think the length of time and the accompaniment to others, you know, maybe suggests that more so than one or the other. If he'd had a cup of coffee and left and they both went their separate ways, I would have to agree with you. There's more. I don't believe the length of the association should necessarily be determinative. And I think the next thing I'd like to raise, and I think this will answer the Court's question, at least from my perspective, if I don't, please let me know, is how do we sort of pinpoint whether there was probable cause? We have decades of case law to guide us. So speaking of which, so if Mr. Guardi had come over with a box and he was suspected of being a drug smuggler and he sits with Mr. Briggs, I think it was, and gives him the box, and then Briggs gives the box to Moran, and, you know, under the Rodriguez case, it seems like the police would have had probable cause to stop Moran under that scenario. And so the government's theory is, well, it really is no different, because instead of a box where you don't even know that it contains drugs, you have an individual who you know or strongly suspect is crossing the border illegally. So he is like the box in the Rodriguez case. But what's wrong with the government's analogy there? Two things. I don't think Rodriguez would support probable cause in that instance, the way the Court has laid it out. But more importantly, my laptop can't ask me for a favor. A box is an inanimate object. A box can't ask for a ride. A box can't say, I was just robbed in Tijuana, I have no money, I'm trying to get to Los Angeles. A box can't do any of those things. But certainty is not required for probable cause. No. And there is regularly probable cause where something turns out to be in the long run mistaken. So that there is a potential innocent explanation isn't necessarily enough. No. But that's why it's always a bad idea to disagree. But that's why I think the circumstances of the arrest are relevant, and only for this reason, to undermine the seriousness of what an arrest is as opposed to, say, a detention under a reasonable suspicion standard. An arrest is a very big deal. So, yes, there doesn't have to be certainty. But we're trying to find, it is, probable cause is hard to tack down. And that's why I'm asking this panel to look at this Court's cases. And the Rodriguez case, the way that was just laid out, I don't think Rodriguez supports the government. And here's why. There's a very important additional fact that agents knew in Rodriguez that is not known in this case or even under this scenario that the Court just laid out. And that is, and this was left out of the government's rendition of Rodriguez. But at Penn Citation 481-83, the defendant meets a van in a truck. A van, which the agents suspect carries this box, or contraband. So that's where on common ground there. The van leaves a known drug house, goes to, I believe it was a taco stand. Yes. And the van was turned over to the defendant in that case, the person challenging the search, and another person, then you have tandem driving the defendant in a car following the van. Counsel, what is your best case, either from this Court or the Supreme Court or even a sister circuit, with facts closely parallel to the ones here where no probable cause was found? What's your best case? I think the Tinney and the Robinson case. And I understand the, first of all, if I could back up, I was surprised that there weren't more cases factually similar to this. I did a pretty, I hope I did a pretty good case law search. And I was surprised that there weren't as many cases factually similar to this. But the Tinney case, T-I-N-N-E-Y, and the Robinson case, which are relied on in my opening brief, those are mere presence cases, the sense that he borrows, cited by this Court, that kind of stuff. But if you look at the actual facts of those cases, I think they're strongest towards me. Because there are facts that indicate more than just a mere presence in both Tinney and Robinson. And to finish my answer to the Court, believe it or not, I think it's DelViso, a case in which the defendant lost. When you look at the quantity and the quality of observations that agents had in DelViso, and you have DelViso calling probable cause in that case a close call, and that's at Penn Citation 827, we're nowhere near the quantity or quality of observations that this Court found added up to probable cause in DelViso. The reason I can't say. Scalia. Can I ask you a question before you go on? Assume for a second, and I don't, I say this just for purposes of argument. So you don't have to tell me I'm wrong, that we find probable cause here. Do your other arguments go away, given that there's a confession that followed, and your only objection to that confession is that it was the fruit of the poisonous tree? Do your other arguments go away if we find probable cause? No, they do not. Here's why. The government has conceded error on the introduction of the material witness deposition, so it comes down to harmlessness on that. I'm running out of time. I'm going to breeze through this. I just wanted to give you some time to address that. Thank you. I appreciate that. Always pays to have a binder. How can it be harmless that the only positive evidence of an element of the crime, Mr. Duarte's alienage and also his permission or lack of permission to enter the country, the only positive direct evidence of that was Mr. Duarte's statements that were introduced in violation of my client's Sixth Amendment rights. They did have testimony, I guess, from your client also from his DEMAS, that they were involved in smuggling an alien. Yeah, that was bad testimony, too. That was another one of my issues. So that would be some other evidence going towards that Mr. Duarte was an alien, I believe. Yes, it would be. Ms. DEMAS had nothing to say about Mr. Duarte's alienage. But that she was called into this situation because there was another alien smuggling episode. To transport someone as she has transported someone in the past, according to her. Yes, I'll agree with you on that. That would be some evidence. I've got what I've got here, right? But if you look at this court's decision in Pina Gutierrez, that's the only case I can find where there's not a material witness in court that's upheld. And here's the evidence that the court thought was relevant. Prior instances by the defendant in that case in immigrant smuggling. So yeah, maybe Ms. DEMAS gets the government to that point. But what the government also had in Pina was evidence that the material witness in that case had been deported. That says something about that person's immigration status. They were deported from the country. Also, the material witness in Pina was, it's sort of bizarre. It's not so bizarre, actually, in our district. But he's balled up, sweaty, in a trunk of a car. You know, it's like, if you're just trying to avoid a warrant, you're probably not going to do that. Counsel, you've exceeded your time. And I think you have answered Judge Hurwitz's question. Thank you. Very well, thank you. Thank you. We'll hear from the government. May it please the Court. The existence of a possible innocent explanation does not negate probable cause. No, but I'm going to give you a hard time, just as I did opposing counsel. It seems pretty skimpy, honestly. It's more than that there's a possible innocent explanation. It seems to me that without the, quote, unquote, expertise of being used to observing things of this kind, that there wouldn't be any suspicion aroused from these events. You know, it's not the furtive passing of drugs and money on the street that most people, if they stopped to notice, would realize something was going on. Basically, you have people meeting at a restaurant. You have somebody walking down the street. You have somebody getting in a car. So why is this enough? Well, because first of all, we're at a port of entry where an imposter has just come through. There were two officers who both looked at that thing and said, this is not that person. So we know now basically we have contraband at a port of entry. Yes, San Ysidro is an urban area, but it sits right next to the border where people come through illegally all the time. In fact, that day there was a pedestrian smuggling operation happening. And that's what happened here. And what happens when there's pedestrian smuggling? Someone has to lead somebody to get somewhere to where they can eventually be transported forward. So that's the activity that officers are looking for. And what did they see here? First they have to have a meeting area. They meet at the jack-in-the-box. They wait. They have to wait until the transportation is ready. Do they just take him? Is it just a walk somewhere? No. That first person walks him to someone, turns and walks. Where does he go? Right back to the exit to Mexico. I think that's very important. Then this defendant then walks the person about four or five blocks, a little bit past, makes sure everything's okay, then come back and then takes him. And I think the testimony is by the time that the officer did arrest that, the material witness had sat down in the car. And so what the officers see is basically this contraband coming in, someone meeting with him, then getting him to the next person, passing him off to the next person, as the district court found. And that's the term the district court used. And remember, the district court here is familiar with these type of cases. He heard this evidence, and he didn't have any trouble saying, you know, this is probable cause. Is it possible there's an innocent explanation? Yes. But when there's all this activity and passing from one person to the next, getting to a place where you then get to a car, that's all consistent with pedestrian alien smuggling at a border. What is your best case for similar facts in which probable cause was found? You know, I don't know that there are many that are – I couldn't find any. I think, as Mr. Rexfield said, I don't find any where there's actually a pedestrian smuggling thing. I think we just have to, you know, we look – you know, I look at the cases that Mr. Rexfield looked at. I see them as mere presence cases. I think here we have more than mere presence. We have activity of leading someone to a particular place. Can I ask you about the confrontation clause problem? Yes. Your brief candidly concedes that there was a confrontation clause violation here in the introduction of the deposition of the material witness. So we have to find that it was harmless beyond a reasonable doubt for you to prevail. Yes. I understand there's other evidence. There's sufficient evidence that might have established Mr. Duarte's alienage. But why should we find that the error was harmless beyond a reasonable doubt, which is what Chapman requires us to do? Well, first, I would – I'm not sure that I agree that what this Court has to do is determine whether this is harmless beyond a reasonable doubt. Well, but there was – there was evidence introduced that the Sixth Amendment says shouldn't have been introduced. But the question is, what is at stake here? The right of confrontation. He had his right of confrontation. Well, I understand that. I understand that there was a – but the Sixth Amendment says that you have a right of confrontation in court unless the witness is unavailable. That's what the cases seem to say. Oh, but this Court has strongly upheld the use of material witness depositions so that people who are not charged with a crime can be released. And that's what – this isn't a civil deposition. This is a criminal deposition. This Court has upheld those. But given unavailability, do you agree, as your brief seems to, that there was a Sixth Amendment violation? I agree. But what I'm saying – Okay. So I understand that he had the right to confront him. Given that there was a Sixth Amendment violation, aren't we required to find under Chapman any error harmless beyond a reasonable doubt? Yes. But I think you have to look, what is the – what is the error? What is the – what is he complaining of here? He can't say that the person wasn't available. We all know he was unavailable. He can't say the person wasn't inalienable. How do we know he was unavailable? Well, I guess we don't for sure. Counsel, you know, it would be helpful to me if you would go to the evidence and not argue with the question, because I really think that it would – why can we find it harmless beyond a reasonable doubt if that's the standard? No, you don't concede that's the standard. But go to the question. Yes, absolutely. If that's the standard, we have Mr. Moranelis admitting that he knew that he was a documented alien. That's on pages 297 and 298. Now, there is some conflicting thing there, because afterward he says, did you know? Yes. Then he said, did he tell you? Yes. Then he says, oh, he – then he – wait, wait, no, he didn't tell me. So he backs off the fact that he told him, but he doesn't back off the fact that he knew. So we have Mr. Moran's confession. Right. What else do we have? Then we – but we have – in order to support what I'm saying about the fact that he knew but didn't tell him, two more times, page 307, there's a question about undocumented aliens. He says, uh-huh. And then again on page 315, another question including undocumented aliens. Then we have Ms. Demas' testimony that she was involved in this kind of thing, that is, undocumented aliens. We also have the fact that this person is an imposter. Imposter – this person is using somebody else's ID. People who use somebody else's ID are not legal residents or not citizens. They're aliens. Then we have the methodology that was used here. We see that – we know, Ms. Demas, people don't get paid. To – both Mr. Moran said, I was going to get paid. On page 292, paid $150. Ms. Demas says she was going to get paid. People don't get paid this kind of money to transport citizens, unless you're a taxi, maybe. There's the whole method that they brought him in, they led him, you know, they waited for a while, made sure everything was set up. They led him to one person, that person leads him to another. So we have all of that testimony and evidence. We have all the other evidence in the case. The fact that the other defendant says, I'm here at Cortez, or he says Cotez, there's no R there. I'm here at Cotez. The very place where Ms. Demas says this all arises from, where she met both A.A. and Moran when she first got started. All the telephone calls show the connection between these people all through the day. They show Mr. Briggs at the pedestrian entry to make sure Mr. the material witness gets through okay. So I think when you take a look at all that evidence together, including Mr. Moran Elias's admissions and Ms. Demas's testimony, I believe that all then proves that there was sufficient evidence to show that this was an alien. Is it sufficient evidence to test, or is it evidence so that no reasonable finder of fact could find it? I think it's any reasonable finder of fact. I think that's the standard. And I think any reasonable one could, given all of those pieces of evidence. And I would say that again, all of that also just shows the overwhelming evidence that was against Mr. Moran Elias. Not the least of which, his own admissions. He was going to get paid, that this was an undocumented. He even laughs at one point, that I was going to get my money one way or the other. He finally jokes with the page 313 of the ER. He jokes with them. So you know, here's a man who's admitting, I'm going to get paid. Ms. Demas set out the whole thing, how it all started, how they did this. She did it 60 times with Ms. Moran Elias, 30 times, how this was consistent with that. I think that all of that evidence, and then the phone evidence to confirm the relationships between all of the people, I think shows the overwhelming evidence here. And that's why I think, yes, this was not a perfect trial by any means. But it was a fair trial. It was fair and there was a just result. And that is that there's no question that the government proved beyond a reasonable doubt that Mr. Moran Elias was guilty of conspiracy to smuggle and smuggling and transportation. I think the overwhelming evidence, most important of which is his admission, proves that. Are there any further questions? I think not. Thank you. Mr. Rexrod, you used your time, but we asked a bunch of questions. You may have one minute for rebuttal. Thank you. The government may not lock my client. It doesn't mean he wasn't entitled to a fair trial. The answer to the court's question is they have to prove it harmless beyond a reasonable doubt. It's not any rational juror. It's not a sufficiency analysis. It's just not. I want to take 30 seconds to address the court's question that I didn't address directly before. I'm not going to tell you my client's statement was helpful. I tried this case. I argued this case. But my client's statement was explicable. And the government is wrong that my client admitted knowledge that the material witness lacked permission to come into the country. The entire what was presented to the jury in deposition form is in excerpt of record. It's in my volume two. Mr. Moran also says over and over that he became involved in this scheme after Mr. Duarte entered the country. That would make him not guilty of the bring-to, which is what cost my client a 36-month minimum mandatory sentence. My client's statement didn't help me at trial. I got around it, I thought. It doesn't get the government over a harmlessness hump. Thank you. Thank you, counsel. The case just argued is submitted, and we very much appreciate the arguments that both of you presented today.
judges: Graber, Ikuta, Hurwitz